Filed 12/11/20  In re A.H. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re A.H., a Person Coming Under the Juvenile Court Law. | B304199 (Los Angeles County Super. Ct. No. 19CCJP05773) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| SHAMIKA H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Shamika H. (Mother) appeals from the juvenile court's jurisdiction findings and disposition orders declaring 15-month-old A.H. a dependent of the court under Welfare and Institutions Code[1] section 300, subdivision (b)(1), based on Mother's substance abuse. Mother contends there is insufficient evidence to support the jurisdiction findings. Mother also challenges the disposition orders removing A.H. from her physical custody, granting monitored visitation, and requiring Mother to participate in a drug treatment program. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Prior Referral*

In September 2018 the Los Angeles County Department of Children and Family Services (Department) received a referral alleging general neglect of newborn A.H. by Mother. According to the reporting party, Mother had a history of cocaine use,[2] and she last used cocaine on January 1, 2018. Mother stated she stopped using cocaine after she found out she was pregnant. In April

_____

[1]    Further statutory references are to the Welfare and Institutions Code.

[2]    Mother was arrested for possession of a controlled substance on November 9, 2010.

2

2018 Mother started using marijuana for pain management after she got into a car accident, but she claimed she stopped using marijuana after she tested positive on April 26, 2018.

Mother tested negative for drugs upon admission to the hospital for childbirth.[3]  After Mother and A.H. were discharged, they stayed at a homeless shelter.  The social worker did not conduct an investigation because Mother and A.H. were doing well, and Mother was compliant with the homeless shelter's house rules.

## B.    *The Referral and Investigation*

On August 9, 2019 the Department received a referral alleging Mother neglected then-10-month-old A.H.  On August 8 Mother was driving with A.H. when she was involved in a car accident in which the other driver was determined to be at fault. Mother and A.H. were transported to the hospital by ambulance because of Mother's injuries.  At the hospital, Mother tested positive for methamphetamine and marijuana.[4]  Mother arranged for A.H. to stay with maternal grandmother S.M. when A.H. was discharged from the hospital.  Maternal grandmother planned to take Mother and A.H. to her home after the hospital discharged Mother.

On August 9 investigating social worker Carissa Spurlock interviewed maternal great uncle Tyrone F.  Tyrone and other maternal relatives had visited Mother earlier that morning in the

---

[3]    On January 9, 2019 the juvenile court found Y.O. was A.H.'s alleged father.  Y.O. is not a party to the appeal.

[4]    Mother also tested positive for opiates, but the results reflected medication given to Mother at the hospital.

hospital. Mother was in great pain from her right ankle injury, and she appeared to be hallucinating, asking for A.H.'s deceased maternal great-grandmother to help her. According to Tyrone, Mother and maternal grandmother did not have a good relationship and constantly argued.

Maternal grandmother stated she was not aware Mother was using methamphetamine until the hospital social worker informed her there were drugs in Mother's system. Maternal grandmother had helped Mother get into a homeless shelter when A.H. was born, but Mother was asked to leave because she got into an argument with another client. Mother had taken care of A.H. by herself; however, more recently Mother left A.H. with maternal grandmother for a couple of hours or one to two days. Maternal grandmother disclosed she had previously lost custody of her four children because of her cocaine addiction, but she had been sober since 2014. She was prepared to care for A.H. if Mother could not get into a drug treatment program. Maternal grandmother's roommate, Laronda Burton, had a substance abuse history, but she had been sober for many years. Burton stated A.H. could only temporarily stay with her and maternal grandmother in their two-bedroom apartment because it was subsidized low-income housing, and Burton did not want to get into trouble with the housing authority.

On August 9 Spurlock also interviewed Mother at an apartment in Inglewood. Mother stated she was homeless, and she and A.H. were staying with her friend Tal Jones in the one-bedroom apartment. Mother and A.H. slept on a mattress in the living room. Mother stated she understood the risk of cosleeping with A.H., but it made it easier to give A.H. a bottle in the middle of the night. Spurlock observed Mother was coherent and well-

4

groomed, and there was no visible drug paraphernalia in the apartment.

Mother reported she was driving when the car in front of her made an illegal U-turn and hit her car. Her car spun out of control, and a rear tire and rotor fell off her car. A.H. was in her car seat and was not injured. Mother and A.H. were taken to the hospital because Mother's right anklebone was shattered. Mother stated she never authorized the hospital to test her for drugs. She admitted using both methamphetamine and marijuana, but she denied she was "high" or under the influence of drugs while driving. Mother said she last used methamphetamine two to three weeks earlier and did not often smoke marijuana. When Spurlock advised Mother methamphetamine remained in the body for only a few days, Mother continued to deny she regularly used drugs. Mother added she did not use drugs around A.H.; instead, she would leave A.H. with the maternal grandmother if she planned to use drugs. Mother stated she was committed to changing her lifestyle and ending her use of drugs.

On August 13, 2019 Mother tested positive for marijuana with a THC level of 359 ng/ml.[5] On August 15 Mother was accepted into an inpatient drug treatment program. Maternal grandmother again cared for A.H. But five days later Mother reported she was no longer in the program because it could not accommodate her medical needs, including surgery to repair her right ankle and physical therapy. Mother planned to move back in with Jones while A.H. remained with maternal grandmother.

---

[5]     Nanograms per milliliter.

On August 27 Mother tested positive for marijuana with a THC level of 43 ng/ml.

C.     *The Petition and Detention*

On September 5, 2019 the Department filed a dependency petition on behalf of A.H. under section 300, subdivision (b)(1). Count b-1 alleged Mother had a history of substance abuse including cocaine and marijuana and was a current abuser of methamphetamine and marijuana, which rendered her incapable of providing appropriate care and supervision of A.H.  On August 8, 2019, while A.H. was in Mother's care, Mother tested positive for methamphetamine and marijuana, and she again tested positive for marijuana on August 13 and 27.  Count b-2 alleged Mother endangered A.H. because Mother drove under the influence of methamphetamine and marijuana with A.H. in the car, and Mother was involved in a car accident.

At the September 6, 2019 detention hearing, the juvenile court detained A.H. from Mother.  The court ordered Mother to submit to random drug testing.  The court granted Mother monitored visitation with the Department having discretion to liberalize visitation or return A.H. to Mother's care.

D.     *The Jurisdiction and Disposition Report*

The October 15, 2019 jurisdiction and disposition report stated Mother denied having a substance abuse problem.  Mother said, "That's funny because I wasn't under the influence, it was in my system.  My daughter has never been in danger.  The car accident was not my fault.  Clearly I don't have a drug problem." When Mother was asked "how the drugs ended up in her system," she replied, "Smoked it probably a couple of days before.  Not

6

even really smoked it. I was around people that was smoking. I haven't even been using it." But Mother admitted she used drugs sometime "[s]ince before the car accident." Mother added, "They drug[] tested me after the accident. I believe that my mom told them to test me because she wants my daughter. I find that funny because she cannot have any kids in her possession."

Mother also denied she placed A.H. in a detrimental situation by driving while under the influence of methamphetamine and marijuana. Mother stated, "My child wasn't in danger at all. She was strapped into her car seat. I wasn't under the influence at all. I wish they would stop saying that because that's false." Mother said the other driver was at fault because he made an illegal U-turn and hit her car.

Mother was willing to participate in parenting and life skills classes, counseling, and random drug testing to reunify with A.H. Mother tested negative for drugs on September 12 and October 8, 2019. However, she did not show up for testing on September 23. Mother did not test in the two months leading up to the jurisdiction and disposition hearing, missing drug tests on November 19 and 26 and December 4, 9, 17, and 24. Mother explained she did not have transportation to get to the drug testing site. The social worker offered Mother a bus pass on three separate occasions, but Mother responded she could not walk to the bus stop. Mother's friend Earl took her to monitored visits with A.H., but Mother claimed she did not want to ask Earl to take more time off from work to drive her to the drug testing site.

E.  *The Jurisdiction and Disposition Hearing*

At the January 9, 2020 jurisdiction and disposition hearing, the juvenile court sustained the allegations in counts b-1 and b-2 of the petition under section 300, subdivision (b)(1). The court found Mother did not understand that driving under the influence of drugs with A.H. was a safety risk. The court stated, "[A]lthough the accident was not caused by [Mother], the fact that [Mother] was unable, possibly, to prevent the accident, could be a result of the fact that the mother is using and abusing multiple drugs at the same time, and possibly self medicating."

The juvenile court removed A.H. from Mother's physical custody. The minute order states the court "finds by clear and convincing evidence . . . [¶] [that it] is reasonable and necessary to remove the child from the parents . . . because there is a substantial danger to the physical health, safety, protection, or physical or emotional well-being . . . of the child, and there is no reasonable means by which the child's physical health can be protected, without removing the child from the home and the care, custody, and control of that or those parent(s) . . . ." (Boldface omitted.) However, the court did not make any oral findings on the record to support removal, nor did it address reasonable alternatives to removal. The court ordered Mother to participate in a full drug treatment program with aftercare, weekly on demand drug testing, a 12-step program with court card and sponsor, parenting classes, and individual counseling to address case issues including substance abuse. The court explained, "She is going to enroll in parenting [classes], because she clearly is not understanding the obligations of having a young child and driving under the influence of alcohol and drugs, and whatever is—her need to use illegal substances, that the court

8

finds, that individual counseling will address, as to the nexus that this accident could have been more severe than it was, and there is the risk." The court granted Mother monitored visits three times a week for a minimum of three hours each visit with the Department having discretion to liberalize visitation.

Mother timely appealed.

## DISCUSSION

A. *Substantial Evidence Supports the Jurisdiction Findings Under Section 300, Subdivision (b)(1), Based on Mother's Substance Abuse*

1. *Governing law*

"Section 300, subdivision (b)(1), authorizes a juvenile court to exercise dependency jurisdiction over a child if the 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or . . . by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse.'" (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; accord, *In re E.E.* (2020) 49 Cal.App.5th 195, 205.) Section 300, subdivision (b)(1), requires the Department to demonstrate three elements by a preponderance of the evidence: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child, (2) causation, and (3) serious physical harm or illness or a substantial risk of such harm or illness. (*E.E.*, at p. 205; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561.)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773; accord, *In re R.T.* (2017) 3 Cal.5th 622, 633; *In re D.B.* (2018) 26 Cal.App.5th 320, 328 ["We review the entire record to determine whether the trial court's jurisdictional and dispositional findings are supported by substantial evidence."].) "Substantial evidence is not synonymous with any evidence. [Citation.] To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value." (*In re M.S.* (2019) 41 Cal.App.5th 568, 580; accord, *In re J.A.* (2020) 47 Cal.App.5th 1036, 1046.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E., supra,* 49 Cal.App.5th at p. 206; accord, *D.B.*, at pp. 328-329.)

2.    *The jurisdiction findings are supported by substantial evidence*

Mother contends there is not substantial evidence to support the juvenile court's jurisdiction findings because she was not at fault in the car accident; there was no evidence she was

intoxicated while driving; and there is no nexus between her substance use and risk of serious harm to A.H. There is substantial evidence to support the jurisdiction findings.

Mother had a history of cocaine use and was arrested for possession of a controlled substance in November 2010. Mother last used cocaine on January 1, 2018, when she learned she was pregnant with A.H. But Mother tested positive for marijuana on April 26, 2018, while she was still pregnant with A.H. Then Mother tested positive for methamphetamine and marijuana following her car accident on August 9, 2019, while she was driving with A.H. Mother denied she was under the influence at the time of the accident or had used drugs in the two to three weeks before her accident, but when the social worker explained that methamphetamine only stayed in the body for a few days, Mother admitted she may have smoked methamphetamine a few days earlier, then claimed she was only around other people who were smoking. Mother also denied A.H. was "in danger at all" because she was "strapped in her car seat."

Mother also failed to comply with the juvenile court's order that she submit to random drug testing. Mother claimed she did not have transportation to get to the drug testing center, but she declined the social worker's bus pass offer on three separate occasions[6] and failed to enlist Earl's help to drive her, although he drove her to her visits with A.H. Mother points to the evidence she had negative drug tests on September 12 and October 8, 2019 and the August 27, 2019 test showed her THC levels had declined to 43 ng/ml as proof she was no longer using

---

[6] Mother did not present a doctor's note or other evidence that she could not walk at any time following her injury.

drugs at the time of the January 9, 2020 hearing.  But Mother failed to submit to any court-ordered drug testing for two months, missing six drug tests in November and December 2019.  Mother voluntarily enrolled in an inpatient substance abuse treatment program, but she left after five days.  Although Mother claimed she could not stay there and receive medical treatment, she did not submit evidence she received any other substance abuse counseling or treatment.  Under these circumstances, it was a reasonable inference that Mother continued to have a substance abuse problem.

Mother's denial of her substance abuse problem, noncompliance with court-ordered random drug testing, and failure to recognize she placed A.H. in a dangerous situation by driving with her while she had drugs in her system supported the juvenile court's finding of substantial risk of harm to A.H.  (*In re D.B.* (2020) 48 Cal.App.5th 613, 622 [affirming jurisdiction finding where father lacked insight and "gave no sign he would change his conduct" towards daughter]; *In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.'"].)  Moreover, at the time of the January 9, 2020 jurisdiction and disposition hearing, A.H. was only 15 months old.  Given A.H.'s age, "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm."  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 767; accord, *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1221.)

12

B. *Substantial Evidence Supports the Removal Order; the Juvenile Court Erred in Failing To Make Oral Findings To Support the Order, but the Error Was Harmless*

"'At the dispositional hearing, a dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and that there are no reasonable means to protect the child's physical health without removing the child.'" (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1065; accord, *In re G.C.* (2020) 48 Cal.App.5th 257, 265; see § 361, subd. (c)(1).) The juvenile court must determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B., supra*, 26 Cal.App.5th at p. 332; accord, *In re N.M.* (2011) 197 Cal.App.4th 159, 170.) "A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.] 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.'" (*N.M.*, at pp. 169-170; accord, *In re V.L.* (2020) 54 Cal.App.5th 147, 154.)

"When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012; accord, *In re V.L., supra*, 54 Cal.App.5th at p. 155 ["*O.B.* is controlling in dependency cases"].) We review the entire record to determine whether the removal order is supported by substantial evidence. (*V.L.*, at p. 155; *In re D.B., supra*, 26 Cal.App.5th at pp. 328-329; see *O.B.*, at p. 1011.)

Mother contends the removal order must be reversed because there was not substantial evidence removal was necessary to prevent substantial danger to A.H. The same evidence that supported jurisdiction amply supported the removal order. Mother denied she had a substance abuse problem, failed to understand she placed A.H. in a detrimental situation by driving with her while Mother had drugs in her system, and failed for two months prior to the hearing to submit to court-ordered drug testing to show she was no longer using drugs. Nor has Mother argued on appeal there were reasonable means to protect A.H. absent removal from Mother.

The juvenile court's failure to make factual findings on the record to support removal was error, but we conclude it was harmless. (§ 361, subd. (e) ["The court shall state the facts on

14

which the decision to remove the minor is based."].) The boilerplate findings in the minute order are not a sufficient substitute for the juvenile court making factual findings on the record tailored to the case. But the failure of the juvenile court to state its factual findings was harmless because it is not reasonably probable had the court expressly made findings under section 361, subdivision (e), the findings would have been in favor of continued parental custody. (See *In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1137 ["Although the court did not state a factual basis for its removal order, any error is harmless because it is not reasonably probable such findings, if made, would have been in favor of continued parental custody."], disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218 ["[C]ases involving a court's obligation to make findings regarding a minor's change of custody or commitment have held the failure to do so will be deemed harmless where 'it is not reasonably probable such finding, if made, would have been in favor of continued parental custody.'"]; see Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].)

C.     *The Juvenile Court Did Not Abuse Its Discretion in Ordering Drug Treatment and Monitored Visitation*

"Under section 362, subdivision (d), '"[t]he juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order

15

accordingly.""" (*In re Christopher R., supra*, 225 Cal.App.4th at p. 1221; accord, *In re Daniel B.* (2014) 231 Cal.App.4th 663, 673.) "The juvenile court has authority to require a parent to submit to substance abuse treatment as part of a reunification plan as long as the treatment is designed to address a problem that prevents the child's safe return to parental custody." (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1229.) ""On appeal, this determination cannot be reversed absent a clear abuse of discretion.""" (*Daniel B.*, at p. 673; accord, *Christopher R.*, at p. 1221.)

"A disposition order granting reunification services must provide for visitation between a child and parent 'as frequent as possible, consistent with the well-being of the child.' (§ 362.1, subd. (a)(1)(A).) In addition, section 362.1 mandates '[n]o visitation order shall jeopardize the safety of the child.' (§ 362.1, subd. (a)(1)(B).)" (*In re T.M.* (2016) 4 Cal.App.5th 1214, 1218; accord, *In re Matthew C.* (2017) 9 Cal.App.5th 1090, 1100-1101.) "The power to regulate visits between dependent children and their parents rests with the juvenile court and its visitation orders will not be disturbed on appeal absent an abuse of discretion." (*In re D.P., supra*, 44 Cal.App.5th at p. 1070; accord, *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.)

The juvenile court did not abuse its discretion in ordering Mother to participate in a full substance abuse program with aftercare to address her continuing substance abuse problem. Likewise, the court did not abuse its discretion in ordering monitored visitation in light of Mother's denial of her substance abuse problem and failure to appreciate the risk of harm to A.H. caused by her driving with A.H. with methamphetamine and marijuana in her system.

# DISPOSITION

The jurisdiction findings and disposition orders are affirmed.


FEUER, J.

We concur:


SEGAL, Acting P. J.


RICHARDSON, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.